**Steven Ingram MISKIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14-87-00573-CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 14, 1988.
Discretionary Review Refused
Nov. 9, 1988.

Walter Boyd, Houston, for appellant.

John B. Holmes, Jr., Winston E. Cochran, Jr., Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for the offense of aggravated robbery. The jury affirmatively found that a deadly weapon, a hammer, was used in the commission of the offense. The trial court assessed Appellant's punishment at fifty years confinement in the Texas Department of Corrections. We affirm.

Appellant asserts as his sole point of error that the trial court erred in admitting into evidence a hammer found in the trunk of Appellant's car.

The evidence shows that while the complainant was in Houston, Texas, on business, he visited a topless bar. The complainant talked with a dancer known as "Heidi" and subsequently obtained a room at the motel where she was staying. "Heidi" visited the complainant in his room one afternoon then returned late that night and knocked on the door. The complainant allowed her to enter and Appellant, her husband, also entered. Appellant, armed with a ball peen hammer, struck the complainant on the head, and then continued to hit him twenty-five to thirty times with the hammer. "Heidi" stole two guns from the complainant's suitcase. Appellant instructed her to shoot the complainant but she declined to do so because she thought he was already dead.

The complainant identified Appellant as the man who struck him with the hammer, and Dawn Smeal a/k/a Dawn Miskis, as the woman he knew as "Heidi". Appellant and "Heidi" were arrested at a motel in Baton Rouge, Louisiana. A pawn ticket found in Appellant's room led to the recovery of one of the complainant's guns, and the other was recovered through a confidential informant from a dancer at a Baton Rouge club who purchased it from "Heidi".

The hammer used in the commission of the offense was described by the complainant as "a yellow, clear, hard plastic or fiberglass hammer, with a twelve to fourteen inch handle and a head five to six inches long." He stated that it "looked like" a ball peen hammer and that the handle had a red stripe around the bottom of it. A ball peen hammer was recovered from Appellant's car; however, it had a metal head and wooden handle. Nonetheless, the State offered it as evidence in this case. When State's Exhibit No. 49 was offered into evidence, Appellant objected:

> Object to the introduction of this. I don't see where it is relevant to the case, in that the testimony elicited was it was plastic, had yellow from end to end, top to bottom. This has no similarity to the hammer described by the complaining witness.

Appellant contends that State's Exhibit No. 49 was not shown to be connected with the offense, that the jury might have found a deadly weapon was used in the offense based solely upon State's Exhibit No. 49 and, therefore, its admission into evidence

was harmful. When Appellant objected to the introduction of the hammer, the State responded merely by saying, "It's a ball peen hammer."

■ On appeal, the State argues the hammer was introduced as "demonstrative evidence" to show the jury what a ball peen hammer looks like. The admissibility of demonstrative evidence is controlled by Tex.R.Crim.Evid. 403 which provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

An object, which is not an exact replica of the original used in the commission of a crime, may be admissible if:

(1) the original is not available;

(2) if available, the original would be admissible;

(3) it is relevant *and* material to an issue in controversy;

(4) its probative value outweighs any inflammatory effect; *and,*

(5) the jury is instructed that the object is not the object used in the commission of the crime, and is to be considered by the jury solely as evidence that *demonstrates* or *illustrates* what the object used in the offense looks like.[1]

However, the substitute object should have no inflammatory attributes. Further, when it is not an exact replica and differs in its distinguishing characteristics, "the probative value of the 'non-exact' weapon or instrumentality will be very slight." *Simmons v. State* 622 S.W.2d at 114. The hammer found in the trunk of Appellant's car was not the hammer used in the assault and was not of the same size, weight, length, color or even material as the hammer used by Appellant in the attack; therefore, it had little probative value. Further, the fact that State's Exhibit No. 49 was discovered in the trunk of Appellant's car was an inflammatory aspect which might prejudice the jury.

The record reflects that the offer of State's Exhibit No. 49 was not properly limited to the purpose of showing the type of hammer used in the offense and the trial court did not instruct the jury that it should be considered solely as evidence demonstrating what the hammer looked like. Moreover, under the facts of this case, the character of the hammer used in the offense as a deadly weapon was not disputed at trial. The police officer testified to its deadly character and Appellant admitted that such a hammer could be a deadly weapon. After a careful analysis of the record before us, we find that the admission of State's Exhibit No. 49 into evidence was error.

■ However, we do not find that this error requires reversal. The test for harmless error is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Smith v. State,* 744 S.W.2d 86, 94 (Tex. Crim.App.1987); *Self v. State,* 709 S.W.2d 662, 668 (Tex.Crim.App.1986); *Vanderbilt v. State* 629 S.W.2d 709, 724 (Tex.Crim. App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982).

■ The evidence of Appellant's guilt was overwhelming. The day after the attack the complainant identified Appellant from a photographic array. A pawn ticket discovered in Appellant's motel room in Baton Rouge was redeemed for one of the guns stolen from the complainant. Numerous photographs depicting the complainant's injuries and his blood-spattered motel room were introduced into evidence. The complainant testified to the violence of the attack and that he was rendered unconscious by the repeated hammer blows to his head. A police officer testified that the weapon described as being used in the offense was capable of inflicting serious bodily injury or death and would be considered a deadly weapon. Moreover, Appellant testified that he owned many ball peen hammers and admitted that a fiberglass or plastic ball peen hammer, such as the one described by the complainant, was capable

---

1. *See Simmons v. State,* 622 S.W.2d 111 (Tex.    Crim.App.1981) and cases cited therein.

of causing death or serious bodily injury. There was no attempt to establish that State's Exhibit No. 49 was the weapon used in the offense. Also, it was made clear that all testimony regarding a deadly weapon was limited to the hammer used in the attack. Reviewing the entire record, we hold that the minds of the average jury would not have found the State's case significantly less persuasive had the hammer not been admitted into evidence. *Smith v. State,* 744 S.W.2d at 94; *Vanderbilt v. State,* 629 S.W.2d at 724. The error was harmless beyond a reasonable doubt. Point of error one is overruled.

Accordingly, the judgment of the trial court is affirmed.